**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DVORA WEINSTEIN; STEVEN
WEINSTEIN, individually and on behalf
of all others similarly situated,

        Plaintiffs,

v.

AUBREY K. McCLENDON;
CHESAPEAKE ENERGY
CORPORATION; DOMENIC J.
DELL'OSSO; MARCUS ROWLAND;
MICHAEL A. JOHNSON; JEFFREY L.
MOBLEY; HENRY J. HOOD,

        Defendants - Appellees,

and

ONTARIO TEACHERS' PENSION
PLAN BOARD,

        Movant - Appellant,

and

IBI AMBAN INVESTMENT
MANAGEMENT, LTD; CLAL
PENSION & PROVIDENT FUND, LTD;
ARKANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM; STATE
UNIVERSITIES RETIREMENT
SYSTEM OF ILLINOIS; STATE OF
OREGON, by and through the Oregon
State Treasurer and the Oregon Public
Employee Retirement Board on behalf of

No. 13-6121

the Oregon Public Employee Retirement
Fund; SHI YAN,

Movants.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:12-CV-00465-M)**

---

Joseph Alberto Fonti of Labaton Sucharow LLP, New York, New York (Sean Connelly
of Reilly Pozner LLP, Denver, Colorado, and Jonathan M. Plasse, Javier Bleichmar,
Serena P. Hallowell, and Jeffrey R. Alexander of Labaton Sucharow LLP, New York,
New York, with him on the briefs) for Movant–Appellant.

Robert P. Varian of Orrick, Herrington & Sutcliffe LLP, San Francisco, California
(Spencer F. Smith of McAfee & Taft, Oklahoma City, Oklahoma, and M. Todd Scott and
Alexander K. Talarides of Orrick, Herrington & Sutcliffe LLP, San Francisco, California,
with him on the briefs) for Defendants–Appellees.

---

Before **HARTZ, McKAY,** and **MATHESON,** Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This is a consolidated class action securities case in which Plaintiffs allege that

various corporate officers of Chesapeake Energy Corporation materially misled the public

about Chesapeake's real financial condition in violation of federal securities laws.  The

district court granted Defendants' motion to dismiss the complaint, holding that Plaintiffs

had failed to plead with particularity facts giving rise to a strong inference of scienter as

required by the Private Securities Litigation Reform Act of 1995.  This appeal followed.

**I.**

Plaintiffs filed this complaint on behalf of a class of all persons and entities who purchased or otherwise acquired Chesapeake common stock during the period between April 30, 2009, and May 11, 2012, and who were damaged thereby. The complaint alleges that Defendants materially misled the public through false statements and omissions regarding two different types of financial obligations—(1) Volumetric Production Payment transactions, under which Chesapeake received immediate cash in exchange for the promise to produce and deliver gas over time; and (2) the Founder Well Participation Program, under which Chesapeake CEO Aubrey McClendon was allowed to purchase up to a 2.5% interest in the new gas wells drilled in a given year. With respect to the first program, the VPP program, Plaintiffs allege Defendants touted the more than $6.3 billion raised through these transactions but failed to disclose that the VPPs would require Chesapeake to incur future production costs totaling approximately $1.4 billion. Plaintiffs contend the failure to disclose these future production costs was a material omission that misled investors into believing there would be no substantial costs associated with Chesapeake's obligations to produce and deliver gas over time.

As for the Founder Well Participation Program, Plaintiffs allege that this program set Mr. McClendon's interests in conflict with the interests of the company. While the FWPP required Mr. McClendon to prospectively elect to participate in either all or none of the new wells drilled in a given year and further required him to pay all costs

associated with his portions of the wells,[1] it did not require him to bear the costs of purchasing and exploring land on which no wells were ultimately drilled. Plaintiffs allege that the FWPP thus created an incentive for Mr. McClendon to cause the company to engage in an aggressive land-grab strategy that maximized his odds of participating in productive wells but contributed to Chesapeake's debt problems. Plaintiffs then argue that various Defendants made false statements of material fact when they claimed the FWPP fully aligned Mr. McClendon's interests with the company's. Plaintiffs further argue that Defendants made material omissions of fact when they failed to inform investors that Mr. McClendon was allegedly financing his stakes in the wells through non-recourse loans from lenders who also did business with Chesapeake, which removed any personal risk to him and thus "effectively short-circuit[ed] the alignment of interest that should [have] result[ed] from his participation alongside Chesapeake." (App. at 55 (bolding and italics omitted).)

Plaintiffs then allege Defendants' false statements and material omissions regarding the VPP transactions and FWPP caused the public to believe Chesapeake's financial situation had improved, leading to a significant rise in stock price then followed

---

[1] Chesapeake's SEC filings indicate Mr. McClendon elected to participate in all wells at all pertinent times. Beginning with the program's inception (in slightly different form) in 1993, Mr. McClendon only elected against participation for the five quarters between January 1, 1999 and March 31, 2000. Chesapeake's SEC filings also report that "Mr. McClendon's cumulative expenditures under the FWPP and predecessor programs have significantly exceeded cumulative monthly production revenues to date." (Supplemental App. at 109.)

by a subsequent drop of nearly 60% "when the market learned the truth regarding these programs (that the VPP actually increased corporate liabilities and that the FWPP actually exacerbated conflicting interests)." (Appellant's Opening Br. at 2.)

The district court did not decide whether Defendants had made false material statements or omissions of fact. Instead, the court simply held that the allegations in the complaint did not give rise to a strong inference that Defendants acted with the intent to defraud or recklessness, as required by the Private Securities Litigation Reform Act. The district court accordingly granted Defendants' motion to dismiss.

## II.

We review the district court's dismissal de novo, applying the same standards as the district court. Because Plaintiffs' claims are based on Section 10b of the Securities Exchange Act, they are governed by the Private Securities Litigation Reform Act, which was passed in 1995 as part of "'a bipartisan effort to curb abuse in private securities lawsuits.'" *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001) (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999)). "The PSLRA thus mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular." *Id.* A plaintiff alleging securities fraud under Section 10b "bears a heavy burden at the pleading stage" and must allege that:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the

misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). These allegations must be made with specificity: a complaint alleging a violation of Section 10(b) must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The complaint must also "state with particularity facts giving rise to a strong inference" that the defendant made the identified statement with the requisite level of scienter. 15 U.S.C. § 78u-4(b)(2)(A).

"[T]o establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." *Fleming*, 264 F.3d at 1261. "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *Id.* For the scienter element to be met, "the important issue . . . is not whether Defendants knew the underlying facts, but whether Defendants knew that not disclosing the [underlying facts] posed substantial likelihood of misleading a reasonable investor." *Id.* at 1264 (emphasis omitted). Moreover, the Supreme Court has held that

-6-

"in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The Supreme Court further explained:

> To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences" . . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.* at 323-24. We must consider all of the facts collectively to determine whether the scienter standard has been satisfied. *Id.* at 322-23.

Plaintiffs contend the district court erred in holding that their complaint failed to state with particularity facts giving rise to a strong inference of scienter. They contend Chesapeake's VPP transactions were central to Chesapeake's overall debt reduction plans, and they argue the FWPP was intended to alleviate serious concerns about Mr. McClendon's previous personal financial dealings and their effects on Chesapeake's stock price. Plaintiffs then argue we can find a strong inference of scienter based on the importance of these programs to Chesapeake's goals, Defendants' allegedly misleading statements regarding the effectiveness of these programs, and the actual drop in market price that followed the disclosure of Mr. McClendon's financing arrangements and of the production costs required for Chesapeake to deliver the gas volumes promised under the

-7-

VPPs.  Plaintiffs argue this case is analogous to *Matrixx Initiatives, Inc. v. Siracusano*,

131 S. Ct. 1309 (2011), in which the Supreme Court held that a cogent and compelling

inference of scienter could be drawn from allegations that a drug company concealed

numerous adverse reports about the health risks of one of the company's products and

issued a press release stating that allegations linking a loss of smell to use of the product

were "completely unfounded and misleading," *id.* at 1316.

However, taking all of the alleged facts in this case collectively, we are not

persuaded these facts give rise to a "cogent and compelling" inference, "at least as

compelling as any opposing inference one could draw from the facts alleged," *Tellabs,*

*Inc.*, 551 U.S. at 323, that Defendants acted with the requisite level of scienter.

Defendants allegedly misled investors by (1) failing to disclose the specific production

costs associated with the company's promises of future production under the VPP

transactions, (2) describing the FWPP as fully aligning Mr. McClendon's interests with

the company's, and (3) failing to disclose the details of Mr. McClendon's personal

financing arrangements relating to the FWPP.  However, there is little in the complaint to

support the conclusory allegation that these allegedly misleading omissions and

statements were motivated by the intent to defraud or by a reckless disregard of a known

"fact that was so obviously material that [Defendants] must have been aware both of its

materiality and that its non-disclosure would likely mislead investors." *Fleming*, 264

F.3d at 1261.  As we have previously noted, "allegations that the defendant possessed

knowledge of facts that are later determined by a court to have been material, without

more, is not sufficient to demonstrate that the defendant intentionally withheld those facts from, or recklessly disregarded the importance of those facts to, a company's shareholders in order to deceive, manipulate, or defraud." *Id.* at 1260. In this case, Plaintiffs have not shown anything more than alleged knowledge of arguably material facts. Contrary to Plaintiffs' arguments, the facts in *Matrixx* gave rise to a much stronger inference of scienter than the facts presented in the case now before us. In that case, the defendants took affirmative steps to discredit specific, objective public allegations regarding the possible health risks of their leading product, *see Matrixx*, 131 S. Ct. at 1324 & n.15 (describing the misleading press release as the "[m]ost significant[]" fact in favor of a finding of scienter), while the allegedly misleading statements on which Plaintiffs rely in this case are much more vague and subjective than the statements at issue there. "Ultimately, the facts [P]laintiff[s] allege[] may constitute a brushstroke or two, but they fail to paint a portrait that satisfies the requirement for a strong inference of scienter under the PSLRA." *In re Level 3 Commc'ns*, 667 F.3d at 1347 (internal quotation marks, brackets, and citations omitted). Viewing all of the allegations in the complaint collectively, we are simply not persuaded these allegations give rise to a cogent and compelling inference of scienter.

We accordingly **AFFIRM** the district court's dismissal of the case.